

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Colleen E. McGuinn*
*Assistant United States Attorney*
*Colleen.McGuinn@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4823*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

October 4, 2024

**<u>VIA ECF</u>**

The Honorable George Levi Russell, III
United States District Judge, Chief
District of Maryland
101 W. Lombard St.
Baltimore, MD 21201

> Re:  *United States v. Maimouna Bagayoko,*
>       Criminal No.  GLR-23-177

Dear Judge Russell:

On August 23, 2023, the Defendant was indicted and charged via Superseding Indictment with two counts of Wire (18 U.S.C. § 1343); and 12 counts of Receipt or Sale of Stolen Vehicles (18 U.S.C. § 2313).  On May 20, 2024, the Defendant entered a plea of Guilty to Count 1, Wire Fraud.

The sentencing hearing in the above-captioned matter is currently scheduled for October 21, 2024, at 10:30 a.m.  As calculated in the Presentence Investigation Report ("PSR"), the Defendant's offense level is 23 and her criminal history category is I, resulting in an advisory USSG sentencing range of 46 - 57 months of incarceration (ECF 77).

The Government requests a sentence of 54 months of incarceration.  In addition to a period of incarceration, the Government requests a period of three (3) years of supervised release, pay restitution to the victims, and pay a special assessment of $100.

The Government submits that its requested sentence is sufficient, but no greater than necessary, to satisfy the purposes set forth in 18 U.S.C. 3553(a).

## I.      <u>18 U.S.C. § 3553(a) Sentencing Factors</u>

The Government's requested sentence of 54 months of incarceration is supported by the factors outlined in 18 U.S.C. § 3553(a).

**(1)     Nature and Circumstances of the Offense**

First, as to "the nature and circumstances of the offense," under 18 U.S.C. § 3553(a)(1), the Government submits that the offense conduct was serious and victimized nine individuals and three companies – 12 in all.  The total value of the cars stolen in this case is over $650,000.  The theft of these cars took significant planning and several moving parts, to include the Defendant's role of moving the cars and preparing the shipping.

As detailed in the Statement of Fact in the Plea Agreement (ECF 74), the Defendant was born in Mali and is a citizen of the United States.  Beginning in at least 2021, the Defendant was part of an auto theft ring that stole luxury vehicles, usually from New York and New Jersey, and brought them into Maryland.  Once in Maryland, the Defendant would help load these vehicles onto large shipping containers bound for countries in West Africa.

As part of the scheme, the Defendant formed two companies which she used to facilitate the shipment of these stolen cars.  Baganegoce LLC was formed in March 2007 and was listed as an import-export business.  The Defendant is listed as the resident agent.  The Defendant is also listed as the resident agent, vice president, and treasurer for Last Way 2 Go Services, Inc., which filed Articles of Incorporation in August 2014.

On November 9, 2021, the Defendant hired a truck driver to transport stolen vehicles from New York to Maryland – he drove the Defendant to the Bronx area of New York City where they met with others involved in the scheme who loaded up the trailer.  The following day, November 10, 2021, investigators were called to Whistler Avenue in Baltimore City for the report of stolen cars in the area.  As officers arrived on Whistler, the Defendant had slipped through their fingers, driving away in one of the stolen cars, a Porsche Taycan – but the truck driver and four of the stolen cars remained:

> 2020  Land Rover Range Rover
> This vehicle was stolen on November 7, 2021, and belonged to victim F.O.  Victim F.O. was driving to his cousin's house on the day of the theft, which was an hour and a half from F.O.'s home.  He was on the Garden State Parkway in New Jersey and stopped to get gas.  F.O. walked into the store to get coffee.  As he did so, a person jumped into his car while the nozzle was still in the tank and sped off.  In the car, F.O. had several personal items, and he was stranded at the gas station for several hours.  F.O. was able to trace the vehicle via GPS information and saw it travel across the George Washington Bridge into New York, and then the GPS was disabled.  When the vehicle was found and towed to Delaware, F.O. went to recover it – the electrical system was destroyed and there was a distinct marijuana smell.  The entire experience was traumatizing and inconvenient as F.O. had worked very hard to obtain a car like this for himself and his wife.



F.O.'s car

2019 Mercedes Benz

This vehicle, belonging to victim P.V., was stolen from his driveway on November 8-9, 2021 in New Jersey.  Thankfully, nothing of value had been left in the car, but when it was returned to him, the front panel had been ripped out and all of the sensors and GPS had been removed, resulting in approximately $10,000 in damage.



P.V.'s car on scene

2020 Land Rover Range Rover

This vehicle, belonging to C.R., was stolen from his driveway on October 30, 2021, at 3:57 a.m. (captured by his ring doorbell) in New Jersey.  Using the GPS, C.R. was able to track his car but only for about two miles before the GPS system was disabled.  The thief blew through the tolls during travel, and because the car was registered to C.R., he was responsible for the bills.  Once recovered, the car was impounded for three and a half months.  Overall C.R. did not have this car for almost 7 months after it was recovered, towed home, and repaired.  During this time, C.R. was responsible for making the monthly payments on his new car that he did not even have nor was he driving.  C.R.'s insurance only covered a rental car for 30 days, so he and his family had to share a car during that period.


C.R.'s car on the container

<u>2021 BMW X7</u>
This vehicle, belonging to D.G., was stolen on November 7, 2021, from his driveway in New York.  The local police were able to view surveillance showing a white SUV drive into the neighborhood.  A male got out of the SUV and then get into D.G.'s BMW, driving away.


D.G.'s car, loaded with boxes of synthetic motor oil

After law enforcement developed the Defendant as a lead, and figured out some of the places where the shipping containers would be placed for loading, they observed the Defendant moving stolen cars and loading them onto containers between December 9-10, 2021.

4



12/9/21 – Defendant working with the tow driver



12/9/21 – Defendant in the stolen Mercedes (victim I.R.) she drove onto the truck bed

There were four stolen vehicles identified as being moved around and loaded onto the container by the Defendant and others. The container was to be shipped by Nidsan Shipping; the paperwork on file was for the Defendant's company Baganegoce, LLC, which was sent to Nidsan by the Defendant along with fraudulent documents to cover up the true commodity of stolen cars. These vehicles were later seized at the Port of Baltimore and identified as stolen from New York and New Jersey:

<u>2019 Mercedes Benz</u>
This vehicle belonged to I.R. and was stolen on December 5, 2021. I.R. was at a car wash where he had been going for years. I.R. was waiting outside of his car for it to go through the wash when a man hit him and knocked him down, then got into his car and stole it. I.R. was 75 years old; and he was the sole caretaker for his wife who has dementia. I.R. was

stranded at the carwash, worried about his wife being alone too long at home.  The next day, I.R.'s daughter took him to the doctor, and he had a tear in his rotator cuff from the fall.  I.R. maintains three other homes for employment and had all his tools in the car at the time it was stolen.

2020 Porsche Panamera
This vehicle, owned by victim A.J., was stolen on December 2, 2021, in New Jersey, while A.J. was at the gym.  When the car was taken, A.J. had his work phone, personal phone, laptop, and other items in the car.  All of those items needed to be replaced.  Initially, he was able to track his car as it traveled north over the George Washington Bridge into the Bronx section of New York City, but then the GPS was disabled.  A.J. also had his credit cards used at liquor stores in the Bronx and an attempted $5000 purchase that his credit card company declined.  When the car was recovered, the front panel was ripped out and all of his personal items were gone.


A.J.'s Porsche before Defendant loaded it onto the container

2021 Audi Q7
This vehicle, owned by L.M. and P.M., was stolen on December 2, 2021, in New Jersey.  L.M. had packed the car the night before with packages and luggage to bring to her daughter who was away at college and about to travel abroad.  When she awoke in the morning, the car was gone along with all of the things she had bought and packed for her daughter's trip overseas.


L.M's car at the Port filled with boxes of rice

Another shipment with Nidsan Shipping was arranged by Baganegoce, LLC; it too contained stolen vehicles that had been fraudulently listed as something else by the Defendant. This shipping container was presented at the Port on December 15, 2021, but not searched until February 2022, when two vehicles were recovered: Victim R.H. had his 2020 Nissan Pathfinder stolen on November 27, 2021, in New York and Victim B.A. had her 2015 Honda Accord stolen from outside of her home, next door to the Defendant's home.

Another shipping container was searched on December 15, 2021, that was associated with the Defendant, and found to contain three more vehicles:

2016 Land Rover Range Rover
This vehicle, belonging to victim S.G. and M.G., was stolen on November 5, 2021, in New Jersey.  S.G. had parked his car at a trucking business, and the car was stolen from the lot. His briefcase was in the car when it was taken.

2017 Lincoln MKZ
This vehicle, belonging to Koons Automotive, was stolen on from the dealership in Prince William County, Virginia.

2020 Ford Transit Van
This vehicle, belonging to U-Haul was stolen in Washington, D.C. in September 2021.

The value of all of these cars was at least $650,000.  The Government does not contend that the Defendant is the one who physically stole the cars, but she was certainly working with the group who did, making sure that those stolen cars were loaded onto the containers that she arranged, using fraudulent documentation.  Her role was significant:  traveling to NYC to see the cars, transporting and arranging to transport them back to Maryland, receiving the cars upon arrival, and of course making the shipping possible by sending fraudulent car titles and information to the shipping company as well as making payments through Zelle.

While the theft of high-end motor vehicles could be seen by some as "champagne problems" for these victims, the Defendant's actions and those of her uncharged co-conspirators greatly impacted several people, costing them months of worry, anxiety, inconvenience, and monetary loss.

**(2)     The History and Characteristics of the Defendant:**

The Government agrees that the Defendant has no prior criminal convictions and that she is also a Zero Point Offender pursuant to U.S.S.G. §§4C1.1(a) and (b) (ECF 77, ¶39).

However, the Defendant has exhibited a pattern of conduct surrounding these offenses that is baffling.  When law enforcement made contact with the truck driver hired by the Defendant in November 2021, he described a previous trip in October 2021, where he drove to New York for the Defendant and brought back luxury vehicles which the Defendant loaded onto shipping containers.  Those cars were described as a red Audi RS7, a blue Range Rover Velar, a black Range Rover, a red Audi SUV, and a white Mercedes Benz S430.

On January 16, 2022, the Defendant was charged in Baltimore City District Court, in case 6B2449509 (ECF 77 ¶ 52) with the theft of motor vehicles related to this case.  On January 19, 2022, law enforcement executed a search warrant at the Defendant's home, seizing among other things her phone (which she had hidden under her son's bed and later claimed was her daughter's, who did not live in the home), sealing tabs for shipping containers, vehicle titles, shipping dock receipts, a credit card re-encoding machine with blank credit card stock, documents from her businesses, and other items.   After arrest and during her Mirandized statement, the Defendant denied everything, even when shown pictures and told she was observed by law enforcement on December 9-10, 2021, with the stolen cars and shipping containers.

While on release in the above case, and while the federal investigation was underway, the Defendant was charged in Delaware with possession of stolen cars and leaving the scene of an accident (ECF 77, ¶ 53) on March 3, 2022 - about 6 weeks after she was arrested by Baltimore City Police.  The Defendant was seen fleeing the scene of an accident on foot on the southbound interstate in New Castle, Delaware.  The car involved in the accident was a 2019 Range Rover with a NJ tag that had been reported stolen on March 2, 2022. The Defendant denied she had been driving that car, even though witnesses saw her exit from it and begin to run.  Both the Baltimore City case, and the Delaware charges, were dismissed in favor of the federal charges.

It is significant that even after her role in the ring was uncovered, and she had been arrested at the state level, the Defendant showed no signs of stopping her behavior.

### (3)     Need to Afford Adequate Deterrence to Criminal Conduct:

Under 18 U.S.C. § 3553(a)(2)(B), there is a need "to afford adequate deterrence to criminal conduct." A sanction needs to be imposed to send a signal to others who would contemplate engaging in repeated theft and receipt  of stolen motor vehicles.  A sentence of 54 months of incarceration for this theft scheme deters others.

General deterrence is particularly important sentencing factor in fraud or property crime cases such as this one because it is viewed to be effective.  *See United States v. Martin¸* 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence."); *United States v. Edwards¸* 595 F.3d 1004, 1021 (9th Cir. 2010)("[B]ank fraud, unlike an assault in a tavern or even domestic abuse, tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision.").

The theft of motor vehicles that are then shipped through the Port of Baltimore is an ongoing and rising problem.  According to the U.S. Customs and Border Protection (CBP), 343 stolen vehicles were stopped between October 2022 and September 2023.[1]  As here, most of the

---

[1] https://www.thebaltimorebanner.com/community/criminal-justice/baltimore-stolen-vehicles-port-cbp-EQR4RLE22VH2VDRMKNH5QXFE3U/

343 stolen cars were bound for West Africa.  The Port of Baltimore is ranked third in the nation for stolen vehicle recoveries, according to CBP, with the most popular model being the Land Rover Range Rover.

The Defendant here was part of a transnational trade of stolen vehicles, generating a stream of revenue for a criminal organization.  In Baltimore, where this particular type of crime is on the rise and directly impacts the Port, a significant sentence here would serve as a deterrence not just for the Defendant but for others.[2]

### (4)       Need to Avoid Unwarranted Sentence Disparities:

Under 18 U.S.C. § 3553(a)(6), there is a need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Recently, in *United States v. Rodley Balthazar and Abdul Turay*, PJM-23-032, the defendants were sentenced to 37 months and 51 months, respectively, for conspiracy to commit transportation of stolen motor vehicles and receipt and possession of stolen motor vehicles.  In this case, the defendants worked together to rent vehicles from car rental companies using false identifications and credit cards and would then transport the cars onto large shipping containers bound for West Africa.  The defendants used fraudulent paperwork to conceal the contents of the containers as well.  Balthazar's sentencing guidelines range was 33-41 months.  Turay's sentencing guidelines range was 63-78 months.

In *United States v. Asomah Maamah*, GLR-21-167, the defendant plead guilty to the theft and exportation of at least 17 vehicles worth approximately $860,000.  The defendant and others stole the cars from victims and rental companies and loaded them onto shipping containers bound for Africa.  The defendant was sentenced to 7 years in prison (guidelines range of 84-105M), which was later reduced to 70 months due to a change in his criminal history points.

### II.      Victim Impact

The Government has notified the victims of the offense of the sentencing hearing.  To date, only one victim has sent a victim impact statement, which was provided to the Court and the Defendant on September 4, 2024.  The Government does not believe any victims will be present at sentencing or ask to speak to the Court during the hearing.  Of course, as victims of the offense, they are entitled to do any/all of the above.  See, 18 U.S.C. § 3771.  As soon as the Government is aware of any changes, we will advise the Court.

---

[2] There is no shortage of news articles regarding the use of the Port by criminals to ship stolen cars overseas, particularly to West Africa.  *See* https://local21news.com/news/nation-world/stolen-vehicles-seized-port-of-baltimore; https://www.wbaltv.com/article/stolen-vehicles-seized-port-of-baltimore-operation-terminus/44963668; and https://www.cbp.gov/newsroom/local-media-release/cbp-s-baltimore-field-office-announces-fiscal-year-2023-recoveries

### III.    <u>Restitution Request</u>

Pursuant to 18 U.S.C. § 3663A and U.S.S.G. §5E1.1, restitution shall be ordered in this case.  As such, the United States respectfully requests that an Order of Restitution be entered, as part of the Defendant's sentence in this matter.  The Government will provide contact information for the payment of restitution to each these victims to the Courtroom Deputy via a separate document.

### IV.    <u>Conclusion</u>

For the reasons set forth above, the government respectfully submits that 54 months of incarceration, 3 years of supervised release, and restitution, is a reasonable sentence, and is sufficient, but not greater than necessary to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a)(2).

Very truly yours,

Erek L. Barron
United States Attorney

Colleen Elizabeth McGuinn
Assistant United States Attorney

10